Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| MS DISTRIBUTORS, LLC<br><br>Apelantes<br><br>v.<br><br>CHRISTIAN ELÍ MARTÍNEZ LUGO Y OTROS<br><br>Apelados | TA2025AP00357 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2024CV11672<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente); Interferencia Torticera; Daños y Perjuicios |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de diciembre de 2025.

La parte apelante, MS Distributors LLC, comparece ante nos para que dejemos sin efecto la *Sentencia* emitida y notificada el 6 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante la misma, el foro primario desestimó una demanda sobre interferencia torticera contractual y daños y perjuicios, incoada por la parte apelante en contra de la parte apelada, Christian E. Martínez Lugo, Eliezer Martínez Lugo y EVC Industrial LTDA. A su vez, el Foro *a quo* denegó una solicitud de interdicto provisional al amparo de lo dispuesto en la Ley de Contratos de Distribución, Ley Núm. 75 del 24 de junio de 1964, según enmendada, 10 LPRA sec. 278 *et seq,* presentada por la parte apelante.

Por los fundamentos que expondremos a continuación, se revoca la *Sentencia* apelada.

**I**

El 23 de diciembre de 2024, la parte apelante presentó la *Demanda y Solicitud de Interdicto Estatutario Provisional y Permanente* de epígrafe.[1] Mediante el referido pliego, sostuvo que a raíz de unos intercambios verbales entre su presidente, el señor Miguel Sánchez Orozco y un representante de la compañía EVC Industrial LTDA, MS Distributors comenzó a fungir como el único distribuidor de los productos Vonixx en Puerto Rico. Luego de comenzada su labor como distribuidor, afirmó que EVC Industrial LTDA le compartió varios borradores de contratos de *distribución exclusiva*, los cuales nunca fueron formalizados. Sin embargo, como parte de sus funciones como distribuidor exclusivo, afirmó haber destinado una suma considerable de dinero, tiempo y recursos para desarrollar un mercado para el desarrollo de la marca Vonixx en Puerto Rico.

Después de varios años de relación comercial, entiéndase para junio de 2022, la parte apelante advino en conocimiento de que terceros ofrecían productos Vonixx mediante plataformas digitales a precios inferiores y realizaban envíos hacia Puerto Rico. A raíz de ello, expuso que, su representación legal se comunicó con los representantes de EVC Industrial LTDA, para informarles sobre la

---

[1] La parte apelante acompañó su *Demanda y Solicitud de Interdicto Estatutario Provisional y Permanente* con la siguiente prueba documental: 1) carta a Vonixx del 2 de octubre de 2020; 2) Acuerdo de Confidencialidad; 3) carta a Vonixx del 22 de junio de 2023; 4) correo electrónico entre el señor Igor Sampaio y la representación legal de la parte apelante con fechas del 13 y 17 de julio de 2023; 5) correo electrónico entre el señor Tiago Costa y el señor Sánchez Orozco con fecha del 26 de septiembre de 2023; 6) correo electrónico de parte del señor Tiago Costa respecto a la orden de compra número 090824 con fecha del 15 de septiembre del 2023; 7) correo electrónico entre el señor Tiago Costa y MS Distributors con fecha del 11 de octubre de 2023; 8) carta de cese y desista dirigida a Christian E. Martínez Lugo; 9) carta de cese y desista dirigida a Tiago Costa; 10) correo electrónico suscrito por el señor Tiago Costa dirigido a la representación legal de la parte apelante; 11) carta de cese y desista dirigida a los señores Tiago Costa y Martínez Lugo; 12) carta en respuesta de la representación legal del señor Martínez Lugo; 13) captura de pantalla del perfil de Facebook del señor Martínez Lugo; 14) captura de pantalla de publicaciones de Facebook de Diamond Distributor de productos Vonixx para la venta; 15) captura de pantalla de publicación en la página web de Diamond Distributor del producto *Vonixx Blend Ceramic & Carnauba Paste Wax 3.4 oz* para la venta; 16) captura de pantalla de publicación en la página web de Diamond Distributor del producto *Vonixx V-Plastic PRO Plastic Ceramic Coating - 50ml* para la venta; 17) correo electrónico de Felipe Vasta a clientes de MS Distributors.

situación. Según sostuvo, estos reconocieron la existencia de vendedores que hacían envíos de los productos a la Isla desde los Estados Unidos. Dado a esa problemática, adujo que el señor Sánchez Orozco sostuvo varias reuniones por videoconferencia con el señor Igor Sampaio, quien era representante de EVC Industrial LTDA, para discutir las formas en las cuales se podía establecer restricciones a las ventas de los productos a través de internet por terceros.

Luego de los sucesos, el 11 de octubre de 2023, el señor Tiago Costa, representante de EVC Industrial LTDA, le remitió un correo electrónico, en el cual cuestionó si aún tenía interés en continuar la relación comercial. En respuesta, su Presidente expresó, de manera inequívoca, el interés de la parte apelante en continuar la distribución exclusiva y mantener la relación comercial entre las partes.

De acuerdo con sus alegaciones, en octubre del año siguiente, la parte apelante advino en conocimiento de que los señores Christian y Eliezer Martínez Lugo (los señores Martínez Lugo), bajo el nombre comercial de "Diamond Distributor", estaban vendiendo productos Vonixx en Puerto Rico a precios inferiores. Además, sostuvo que estos se estaban acercando a clientes de la parte apelante para ofrecerle los mismos. Ante esta situación, a través de su Presidente, remitió comunicaciones de cese y desista a los señores Martínez Lugo y a EVC Industrial LTDA. No obstante, afirmó que estos continuaron vendiendo y distribuyendo los productos con el consentimiento de EVC Industrial LTDA. Del mismo modo, la parte apelante alegó que en diciembre de 2024, un representante de EVC Industrial LTDA, contactó a uno de sus clientes para ofrecerle convertirse en distribuidor de productos de la marca Vonixx en Puerto Rico.

A tenor con lo expuesto, la parte apelante solicitó al Tribunal de Primera Instancia la expedición de un interdicto estatutario provisional y permanente, al amparo del Artículo 3A de la Ley de Contratos de Distribución, Ley Núm. 75 del 24 de junio de 1964, 10 LPRA sec. 278b-1, para ordenar a la parte apelada el cese y desista de toda actividad comercial relacionada con los productos Vonixx en Puerto Rico, así como de establecer nuevas relaciones de distribución o ejecutar actos que, según alegó, menoscababan la relación contractual que afirmó mantener con EVC Industrial LTDA. En específico, requirió que la parte apelada se abstuviera de despachar mercancía a los señores Martínez Lugo y que estos últimos, por sí y bajo el nombre de "Diamond Distributor", se abstuvieran de interferir con la alegada relación de distribución, de los productos Vonixx en Puerto Rico. Del mismo modo, pidió una compensación ascendente a $195,000.00 por los daños que alegadamente sufrió en menoscabo de la relación de distribución exclusiva. Además, solicitó una compensación solidaria no menor de $25,000.00 contra los señores Martínez Lugo por la alegada interferencia contractual. Finalmente, reclamó la imposición solidaria de costas, honorarios de abogado, honorarios de perito e intereses, al amparo del Artículo 7 de la Ley de Contratos de Distribución, Ley Núm. 75 del 24 de junio de 1964, 10 LPRA sec. 278e.

Por su parte, el 3 de febrero de 2025, los señores Martínez Lugo comparecieron ante el Tribunal de Primera Instancia a través de la presentación de una *Moción para Desestimar*.[2] En esencia,

---

[2] Los señores Martínez Lugo acompañaron la *Moción para Desestimar* con la siguiente prueba documental: 1) Contrato de Distribución entre Diamond Distributor y EVC Industrial LTDA; 2) captura de pantalla de recibos hasta el 11 de enero de 2025; 3) Renta Local; 4) Orden a Vonixx; 5) correo electrónico suscrito por Wilson Tenório dirigido al señor Eliezer Martínez Lugo y Diamond Distributor; 6) recibo de orden a Best Buy; 7) captura de pantalla de *chat* grupal en *Whatsapp* intitulado "Estrategias Vonixx LATAM"; 8) captura de pantalla de conversación entre el señor Wilson Tenorio y el señor Eliezer Martínez Lugo; 9) comunicado oficial respecto a cambios en el mercadeo de los productos de Vonixx; 10) captura de pantalla de conversación entre representantes de Vonixx y el señor Eliezer Martínez Lugo.

alegaron que no existía un contrato ni acuerdo alguno de distribución exclusiva entre EVC Industrial LTDA y MS Distributors. A su vez, plantearon que la parte apelante no había presentado prueba que acreditara la creación de un mercado ni la realización de esfuerzos de publicidad, entregas, mercadeo, cobros, promoción o mantenimiento de inventario, por lo que, a su juicio, las alegaciones describían exclusivamente la reventa de productos sin elementos propios de una relación de distribución exclusiva, al amparo de la Ley Núm. 75 del 24 de junio de 1964, *supra*. Añadieron que, EVC Industrial LTDA, había ofrecido a la parte apelante la posibilidad de formalizar un contrato de distribución exclusiva y que la parte apelante rechazó la misma por no desear mantener inventario, invertir en promoción ni asumir responsabilidades de mercadeo. Así, luego de reafirmar que, a su entender, no correspondía que la parte apelante reclamara la condición de distribuidor protegido por la Ley Núm. 75 del 24 de junio de 1964, *supra,* solicitaron la desestimación de la demanda y la imposición de costas y honorarios de abogado.

Luego de varias incidencias, el 24 de febrero de 2025, la parte apelante presentó una *Oposición a Moción para Desestimar*. En esencia, sostuvo que, contrario a lo aducido por los señores Martínez Lugo, las alegaciones incluidas en su *Demanda y Solicitud de Interdicto Estatutario Provisional y Permanente* cumplían con los requisitos mínimos exigidos para articular una causa de acción bajo la Ley Núm. 75 del 24 de junio de 1964, *supra,* y que, de ser aceptadas como ciertas, permitían la evaluación judicial de los remedios solicitados.

Del mismo modo, sostuvo que en la solicitud de desestimación, los señores Martínez Lugo hicieron alegaciones sobre materias que no formaban parte de las alegaciones de la demanda. En específico, planteó que su afirmación sobre que la parte apelante

se limitaba a comprar y revender productos como cualquier detallista y que no deseaba asumir obligaciones relacionadas con inventario, mercadeo, promoción o desarrollo de clientela, no podía servir de base para una desestimación, toda vez que eran cuestiones que tenían que ser dilucidadas luego que se ordenara el descubrimiento de prueba. Ante ello, expuso que, al traer materias no contenidas en las alegaciones de la demanda, el Tribunal de Primera Instancia debía considerar la moción de desestimación como una moción de sentencia sumaria presentada al amparo de la Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2. Sostuvo que el pliego tampoco satisfacía los criterios de la referida Regla, toda vez que no se fundamentaba en declaraciones juradas ni establecía la inexistencia de controversias sustanciales de hechos esenciales que permitieran adjudicar el asunto sin la celebración de una vista. A tenor con ello, esbozó que era prematuro plantear la desestimación de la demanda cuestionando su estatus como distribuidor cuando el caso se encontraba en una etapa procesal inicial. En consecuencia, solicitó que se declarara *No Ha Lugar* la *Moción para Desestimar* presentada por los señores Martínez Lugo.

Luego, el 12 de junio de 2025, la compañía EVC Industrial LTDA presentó la *Contestación a Demanda*. En esta, negó las alegaciones hechas en su contra, en específico, negó que existiera algún tipo de acuerdo con el apelante para que este último fuera el distribuidor exclusivo los productos Vonixx en Puerto Rico. Al abundar, explicó que, ante la negativa de la parte apelante de suscribir un contrato para ser distribuidor exclusivo, negoció con otras entidades y desarrolló por sí misma el mercado de los productos Vonixx en Puerto Rico. A su vez, presentó varias defensas afirmativas, entre ellas, que la demanda no exponía la reclamación que justificara la concesión de un remedio.

Evaluados los escritos de las partes, el 6 de agosto de 2025, el Tribunal de Primera Instancia emitió la *Sentencia* apelada. En la misma, acogió los argumentos respectivamente expuestos por la parte apelada y, en consecuencia, resolvió que no concurrieron los elementos necesarios para configurar una causa de acción que justificara la concesión del remedio solicitado. En su pronunciamiento, el foro primario dispuso que, más allá de presentar órdenes de compra a EVC Industrial LTDA, MS Distributors no articuló, de manera plausible, los hechos que sustentaran su condición de distribuidor exclusivo, respecto a los productos Vonixx en Puerto Rico. Determinó que, aun tomando como ciertos los hechos alegados, no pudo identificar que MS Distributors asumiera las funciones que caracterizan a un distribuidor exclusivo protegido por la Ley de Contratos de Distribución, Ley Núm. 75 del 24 de junio de 1964, 10 LPRA sec. 278 *et seq.* En consecuencia, denegó la expedición de un interdicto provisional y del mismo modo, determinó que resultaba improcedente la causa de acción de interferencia contractual contra los señores Martínez Lugo. Consecuentemente, desestimó la demanda de epígrafe.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 26 de septiembre de 2025, la parte apelante compareció ante nos mediante el presente recurso de apelación. En el mismo, formula los siguientes planteamientos:

> Erró el Tribunal de Primera Instancia al desestimar la demanda al concluir que *MS Distributors no articuló, de manera plausible, hechos que sustentaran su condición de distribuidor,* cuando en realidad la demanda sí contiene alegaciones de hecho suficientes y plausibles que demuestran que es un distribuidor protegido bajo la Ley 75, y que, por ende, justifican la concesión de los remedios solicitados.

> Erró el Tribunal de Primera Instancia al considerar las alegaciones de los demandados, y no convertir la Moción de Desestimación a una moción de sentencia sumaria, ya que dichas alegaciones son materia no

contenida en la demanda, en incumplimiento con la Regla 10.2 de Procedimiento Civil.

Luego de examinar el expediente de autos y con el beneficio de la comparecencia de ambas partes de epígrafe, procedemos a expresarnos.

## II

## A

Nuestro estado de derecho reconoce e impulsa el interés de que todo litigante tenga su día en corte. *Rivera et al. v. Superior Pkg., Inc. et al.,* 132 DPR 115, 121 (1992). El empleo de los recursos adjudicativos en nuestra jurisdicción se fundamenta en la política judicial que establece que los casos se ventilen en sus méritos de forma rápida, justa y económica. *Amaro González v. First Fed. Savs.,* 132 DPR 1042, 1052 (1993). En consecuencia, la desestimación de un pleito, previo a entrar a considerar los argumentos que en el mismo se plantean, constituye el último recurso al cual se debe acudir, luego de que otros mecanismos resulten ser ineficaces en el orden de administrar la justicia. *SLG Sierra v. Rodríguez,* 163 DPR 738, 746 (2005). En este contexto, la posición doctrinaria en nuestro sistema de ley es salvaguardar, como norma general, el derecho de las partes a su efectivo acceso a los tribunales. *Imp. Vilca, Inc. v. Hogares Creas Inc.,* 118 DPR 679, 686-687 (1987).

Ahora bien, la Regla 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 (5), provee para que una parte solicite al foro competente la desestimación de un pleito incoado en su contra, bajo el fundamento de que la reclamación en controversia no justifica la concesión de un remedio. Esta defensa "no está sujeta a la regla general sobre acumulación y renuncia de defensas" establecida en el ordenamiento procesal, y "puede aducirse en cualquier alegación responsiva, en una moción para que se dicte sentencia por las

alegaciones e, incluso, luego de comenzado el juicio". *Conde Cruz v. Resto Rodríguez,* 205 DPR 1043, 1067 (2020). En atención a la política pública antes expuesta, para que el referido mecanismo de desestimación proceda en derecho, presupone que se den por correctos y bien alegados los hechos incluidos en la demanda, así como que los mismos se expongan de forma clara y concluyente, sin que de su faz se desprenda margen alguno a dudas. *Costa Elena y otros v. Magic Sport y otros,* 213 DPR 523, 533 (2024); *Eagle Security v. Efrón Dorado et al.,* 211 DPR 70, 78 (2023); *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, pág. 428 (2008); *Colón v. Lotería,* 167 DPR 625, 649 (2006); *Pressure Vessels PR v. Empire Gas PR,* 137 DPR 497, 504-505 (1994).

De igual forma, el pliego de que trate deberá ser interpretado con mayor liberalidad a favor de las alegaciones de la parte demandante, por lo que, recayendo la carga probatoria en el promovente de la moción de desestimación, este viene obligado a demostrar que aquel no tiene derecho a remedio alguno al amparo de los hechos que puedan ser probados en apoyo a su requerimiento. *Dorante v. Wrangler of P.R.,* 145 DPR 408, 414 (1998). En este supuesto, la función judicial estriba en determinar si, aun resolviendo toda incertidumbre en beneficio de la parte demandante, su demanda es suficiente para constituir una reclamación válida. *Pressure Vessels PR v. Empire Gas PR,* supra, pág. 505. Ahora bien, si en una moción de desestimación al amparo de la Regla 10.2 (5) *supra,* "se exponen materias no contenidas en la alegación impugnada, y estas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 [...]". 32 LPRA Ap. V, R. 10.2(5). Cónsono con dicha premisa, la doctrina interpretativa reconoce que "[c]uando se presenta una moción de desestimación acompañada de prueba, la

transforma [...] en una moción de sentencia sumaria; y dispone que sea considerada como tal". R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,* 5ta ed., San Juan, LexisNexis, 2010, pág. 269.

**B**

La *Ley de Contratos de Distribución,* Ley Núm. 75 de 24 junio de 1964, según enmendada, 10 LPRA sec. 278, *et seq.* provee remedio en daños cuando las empresas domésticas y extranjeras eliminan o menoscaban sin justa causa las relaciones comerciales establecidas con sus distribuidores, concesionarios o agentes. *Véase,* Exposición de Motivos, Ley Núm. 75 de 24 junio de 1964, *supra.* El aludido esquema legal impide que un principal se apropie injustamente de la plusvalía de un negocio después de que un distribuidor local ha conquistado un mercado y una clientela a través de su gestión empresarial. *Next Step Medical v. Bromedicon et al.*, 190 DPR 474, 489 (2014). La Ley provee para una causa de acción a favor de los distribuidores cuando son despojados, sin justa causa del negocio gestado a favor del producto introducido. *Next Step Medical v. Bromedicon et al.*, supra, pág. 489; *Cruz Marcano v. Sánchez Tarazona,* 172 DPR 526, 540 (2007); *Medina & Medina v. Country Pride Foods, Ltd.*, 122 DPR 172, 189 (1988). Cónsono con lo anterior, el Artículo 1 de la *Ley de Contratos de Distribucion,* 10 LPRA sec. 278, define "distribuidor" como "persona realmente interesada en un contrato de distribución por tener efectivamente a su cargo en Puerto Rico la distribución, agencia, concesión o representación de determinada mercancía o servicio". A su vez, el referido Artículo define "contrato de distribución" como:

> [R]elación establecida entre un distribuidor y un principal o concedente, mediante la cual, e irrespectivamente de la forma en que las partes denominen, caractericen o formalicen dicha relación, el primero se hace real y efectivamente cargo de la distribución de una mercancía, o de la prestación de un servicio mediante concesión o franquicia, en el mercado de Puerto Rico.

Según ha establecido el Tribunal Supremo, para determinar si una persona ostenta la condición de *distribuidor* protegido por la Ley Núm. 75 de 24 junio de 1964, *supra*, el foro adjudicador debe examinar una serie de criterios dirigidos a identificar si, fundamentalmente por su gestión, se creó un mercado favorable y se conquistó una clientela para un producto o servicio mediante la promoción y conclusión de contratos de ventas. A esos fines, deben considerarse los siguientes factores: (1) La publicidad del producto o servicio; (2) la coordinación del mercado; (3) las entregas de mercancía; (4) los cobros efectuados a los clientes; (5) el mantenimiento de inventario; (6) la promoción y conclusión de contratos de venta; y (7) la asunción de obligaciones generales propias de la función de un distribuidor. Véase *Next Step Medical v. Bromedicon et al.*, supra, a las págs. 492-493; *Oliveras, Inc. v. Universal Ins. Co.*, 141 DPR 900, 914 (1996); *San Juan Merc. v. Canadian Transport Co.,* 108 DPR 21, 215 (1978).

Aunque la creación del mercado y la conquista de una clientela son factores importantes para que se determine que una persona es un distribuidor, el Tribunal Supremo ha aclarado que los criterios expuestos no constituyen una lista taxativa. *Next Step Medical v. Bromedicon et al.*, supra, pág. 493. Es decir, ninguno de esos criterios es determinante por sí mismo, ni tiene mayor peso o importancia que los demás. En consecuencia, el tribunal debe considerar los factores a la luz de la evidencia presentada. *Íd.*

A tenor con el Artículo 2 de la *Ley de Contratos de Distribución*, 10 LPRA sec. 278a, un principal no podrá dar por terminada una relación existente en virtud de un contrato de distribución o realizar actos directos o indirectos en menoscabo de la relación establecida o negarse a renovar el contrato a su vencimiento normal, excepto medie justa causa según definido por el estatuto. *Next Step Medical v. Biomet, Inc.*, 195 DPR 739, 747 (2016); *Systema de PR v. Interface*

*Int'l, Inc.*, 123 DPR 379, 386 (1989). El estatuto busca propiciar estabilidad en las relaciones de distribución en Puerto Rico y erradicar prácticas que, inciden sobre las expectativas legítimas que las partes vinculadas respectivamente ostentan. *Next Step Medical v. Bromedicon et al.*, *supra*, pág. 488.

El legislador confirió al tribunal el poder de conceder remedios provisionales o medidas de naturaleza interdictal durante el curso de un litigio al amparo de la Ley Núm. 75 de 24 junio de 1964, *supra*. Véase, *Next Step Medical, v. Biomet, Inc.*, *supra*. Ello, pues, se interesa "evitar la realización de actos que podrían producir daños irreparables, mientras se dilucida la existencia o no, de justa causa para la terminación de la relación contractual". *Next Step Medical, v. Bromedicon et al.*, supra, pág. 490. El propósito de estos remedios también es "evita[r] el debilitamiento del distribuidor en esta etapa crucial del conflicto y nivela[r] el poder real de las partes. A manera de un primer auxilio, equivale a un torniquete que evita que se desangre el distribuidor mientras reclama los derechos consagrados en la Ley Núm. 75". *Systema de P.R., Inc. v. Interface Int'l*, supra, pág. 387.

El Artículo 3-A de la Ley Núm. 75 de 24 junio de 1964, 10 LPRA sec. 278b-1, establece que el tribunal puede conceder remedios provisionales o medidas interdictales, a través de las que deberán mantenerse vigentes los términos del contrato de distribución, mientras el tribunal resuelve los méritos de la controversia respecto a la justa causa para la terminación del acuerdo de distribución y si procede la concesión de remedios, al amparo del Artículo 3 de la Ley Núm. 75 de 24 junio de 1964. Véase, *Next Step Medical v. Bromedicon et al.*, supra. El Artículo 3-A lee:

> En cualquier pleito en que esté envuelta directa o indirectamente la terminación de un contrato de distribución o cualquier acto en menoscabo de la relación establecida entre el principal o concedente y el distribuidor, el tribunal podrá conceder durante la pendencia del pleito, cualquier remedio provisional o

medida de naturaleza interdictal para hacer o desistir de hacer, ordenando a cualquiera de las partes o a ambas a continuar, en todos sus términos, la relación establecida mediante el contrato de distribución, y/o a abstenerse de realizar acto u omisión alguna en menoscabo de la misma. En todo caso en que se solicite el remedio provisional aquí provisto el tribunal considerará los intereses de todas las partes envueltas y los propósitos de política pública que informa esta ley.

Corresponde al distribuidor agraviado probar el impacto negativo en sus operaciones comerciales a causa del menoscabo o la terminación de la distribución, según sea el caso, para poder obtener un *injunction* a su favor. La parte peticionaria del remedio no tiene que necesaria o forzosamente probar lo siguiente: (1) la existencia de daños irreparables; (2) la falta de justa causa para el menoscabo o terminación del vínculo contractual, y (3) la probabilidad de prevalecer en el juicio en su fondo. *Next Step Medical v. Bromedicon, supra*, págs. 497-499. Por su parte, el principal debe refutar los argumentos presentados por el promovente o evidenciar el detrimento que sobrevendrá a sus negocios, productos, o servicios, de obligarlo a mantener la relación *pendente lite. Véase, Systema de PR v. Interface Int'l, supra.* El juzgador deberá evaluar las posturas de cada parte conforme al propósito socioeconómico del estatuto. *Next Step Medical v. Biomet, Inc.,* supra, pág. 755.

El remedio que contempla el Artículo 3-A es provisional. El estatuto limita su aplicación a un término de tiempo definido. Expresamente dispone que el tribunal podrá conceder cualquier medida interlocutoria "durante la pendencia del pleito". Artículo 3-A de la Ley Núm. 75 de 24 junio de 1964, *supra.*

**III**

En el caso ante nos, la parte apelante sostiene que erró el Tribunal de Primera Instancia al desestimar la demanda de epígrafe, bajo el fundamento de que no articuló una reclamación plausible que justificara la concesión de un remedio, conforme a la Ley Núm.

75 del 24 de junio de 1964, *supra*, toda vez que, según alegó, su pliego contiene hechos suficientes para permitir entrever su condición de distribuidor protegido y la existencia de actos en menoscabo de dicha relación. Asimismo, plantea que incurrió en error el foro primario al considerar alegaciones promovidas por la parte apelada que no forman parte de la demanda, sin convertir la moción de desestimación en una moción de sentencia sumaria conforme al trámite dispuesto en la normativa procesal. Habiendo examinado los referidos señalamientos a la luz del derecho aplicable y de las particularidades del caso, procedemos a revocar la *Sentencia* apelada.

Conforme a la normativa esbozada previamente, existe en nuestro ordenamiento jurídico una política pública que promulga el interés de que todo litigante tenga su día en corte, así como que los casos se ventilen en sus méritos. Por tal razón, ante la presentación de una moción de desestimación que plantee que existe una ausencia de alegaciones en la demanda que justifiquen la concesión de un remedio, el foro adjudicador debe examinar los hechos planteados, tomándolos como ciertos. Si al analizar las mismas de manera liberal a favor del demandante, se desprende que el mismo pudiese tener derecho a algún remedio por sus reclamaciones, la desestimación no procederá.

De igual forma, resulta menester recordar que la Ley Núm. 75 de 24 junio de 1964, *supra*, extiende su protección a toda persona que efectivamente se hace cargo de la distribución de un producto en el mercado de Puerto Rico, independientemente de la forma en que las partes hayan caracterizado su relación comercial. El estatuto define al distribuidor como la persona interesada en un contrato de distribución por tener a su cargo actividades tales como la promoción, coordinación, mercadeo y venta del producto, así como las gestiones inherentes a la creación de un mercado y la

conquista de una clientela. A tenor con la doctrina vigente, tales criterios no constituyen una lista taxativa, sino que operan como factores cuya ponderación requiere un examen integral de las alegaciones y de la evidencia que obre en autos. Por ello, cuando la parte reclamante alega haber invertido recursos y desplegado esfuerzos dirigidos al desarrollo de un mercado para un producto específico, como en este caso, surge un marco razonable para que el foro adjudicador evalúe, mediante la celebración del trámite correspondiente, si la relación alegada se encuentra amparada por el estatuto.

En el caso de autos, al tomar como ciertas las alegaciones expuestas en la demanda, entendemos que la parte apelante planteó hechos que podrían, de ser probados, permitir entrever su condición de distribuidor bajo la Ley Núm. 75 de 24 junio de 1964, *supra.* Alegó haber invertido recursos económicos, tiempo y esfuerzo para promover la marca en el mercado local y desarrollar una clientela, hecho que, conforme a la doctrina expuesta, constituye uno de los factores pertinentes para evaluar la existencia de una relación de distribución protegida. Además, al remitirnos a los documentos en los que apoya su petición, advertimos que la parte apelante incluyó un correo electrónico suscrito por el señor señor Igor Sampaio, representante de Vonixx, mediante el cual, ante el reclamo de MS Distributors relacionado con la existencia de terceros que estaban distribuyendo productos Vonixx hacia Puerto Rico, expresó que "[b]ad to hear that some dealers in the US are selling products outside the country to P[ue]rto Rico".[3] Añadió, además, que "I'd like to know how to prevent multiple dealers in the US not to send goods to P[ue]rto Rico. If you have any suggestions to avoid it happening again. [I'm] here to support you".[4] La referida manifestación podría

---

[3] *Íd.*
[4] *Íd.*

ser indicativa de que, en efecto, la parte apelante fungió como distribuidor exclusivo. Tales planteamientos crean una controversia genuina sobre hechos esenciales que requieren un trámite probatorio para su adjudicación, lo cual impide resolver el asunto a través de la desestimación decretada.

A tenor con lo antes expuesto, no podemos sino concluir que el Tribunal de Primera Instancia erró al desestimar el pleito en esta etapa inicial. El expediente no demuestra que el foro sentenciador contara con evidencia suficiente para concluir, sin margen a dudas, que la parte apelante carece de una reclamación válida al amparo de la Ley Núm. 75 de 24 junio de 1964, *supra*. El foro sentenciador dispuso del caso sin evaluar la solicitud de desestimación conforme al mecanismo de sentencia sumaria provisto en la Regla 36.2 de Procedimiento Civil, *supra*, ni considerar si existía una controversia genuina de hechos esenciales que requiriera la continuación del trámite ordinario.

Así, a raíz de lo expuesto, revocamos la Sentencia apelada y devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a derecho.

**IV**

Por los fundamentos que anteceden, se revoca la *Sentencia Parcial* apelada, ello a tenor con lo dispuesto por este Foro.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones